IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAZMON LYN-ARVEDA MORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:24-cv-03089-DGK |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This case arises from the Commissioner of Social Security's ("the Commissioner") denial of Plaintiff Jazmon Lyn-Arveda Morton's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381–1385. The Administrative Law Judge ("ALJ") found Plaintiff had several severe impairments, including depression, ADD, PTSD, borderline traits, anxiety disorder, and bipolar mood disorder, but she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional restrictions. The ALJ ultimately found Plaintiff could perform work as a box bender, drier attendant, and hand packager.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff applied for SSI on February 14, 2022. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing on May 8, 2023, and issued a decision finding Plaintiff was not disabled on June 22, 2023. The Appeals Council denied Plaintiff's request for review on February 2, 2024, leaving the ALJ's decision as the Commissioner's final decision. Judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

The Court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors. *Igo v. Colvin,* 839 F.3d 724, 728 (8th Cir. 2016). Substantial evidence is less than a preponderance but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the Court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The Court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin, 789 F.3d 847, 852* (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The Court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

**Discussion**

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Here, Plaintiff argues the ALJ erred at Step Four because: (1) she did not evaluate the "consistency" factor as required by 20 C.F.R. § 404.1520c in discounting the medical opinion of John Carpenter, MSW, LCSW; and (2) she did not explain why she omitted certain limitations from the State's psychological consultants' opinions from the RFC. Plaintiff's arguments are unpersuasive.

**I.  The ALJ properly considered Mr. Carpenter's medical opinion.**

Plaintiff argues the ALJ improperly considered Mr. Carpenter's medical opinion. The regulations require an ALJ to focus on the persuasiveness of a medical opinion using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(a)–(c). Supportability and consistency are the most important factors to consider, and an ALJ must explain how both factors are considered. *Id.* § 404.1520c(b)(2). Supportability evaluates the relationship between the medical opinion and the evidence and explanations from the medical source. *Id.* § 404.1520c(c)(1). Consistency compares

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) [her] impairments, alone or combined, are medically severe; (3) [her] severe impairments meet or medically equal a listed impairment; (4) [her] residual functional capacity precludes [her] past relevant work; and (5) [her] residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that she is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

the medical opinion to the other evidence (medical and non-medical) in the record. *Id.* § 404.1520c(c)(2).

In evaluating Mr. Carpenter's medical opinion, the ALJ stated the following:

> Mr. Carpenter is a mental health specialist, and he has a treating relationship with the claimant. However, his own treatment notes do not support his opinions, as they generally reveal that the claimant is positive, upbeat, happy, fun-loving, she is smiling, and she makes good eye contact. Moreover, in March 2023, the same month Mr. Carpenter completed the medical source statement, his own treatment notes indicate that the claimant has an improved mood. In addition, Mr. Carpenter's opinion is in the form of a checklist with no narrative explaining or supporting his findings, and although he finds numerous "extreme" limitations, Mr. Carpenter makes no referrals for more aggressive care. For all of these reasons, the undersigned finds that the opinions of Mr. Carpenter are not persuasive.

R. at 22 (citations omitted). Plaintiff argues the ALJ erred because this discussion never addressed the consistency factor as required by the regulations.

Plaintiff's argument is unpersuasive. This Court has repeatedly found that an ALJ complies with the regulations so long as their opinion, when read as a whole, supports the ALJ's persuasiveness findings. *See Fluke v. O'Malley*, No. 4:23-CV-00259-DGK, 2024 WL 943458, at *2 (W.D. Mo. Mar. 5, 2024); *Wicks v. O'Malley*, No. 3:23-CV-05021-DGK, 2024 WL 1308107, at *2–3 (W.D. Mo. Mar. 27, 2024); *Hancock v. O'Malley*, No. 6:23-CV-03370-DGK, 2024 WL 3338579, at *2–3 (W.D. Mo. July 9, 2024).

Here, although the ALJ's discussion of Mr. Carpenter's medical opinion did not include the word "consistency" or contain citations to the record, it directly followed the ALJ's detailed discussion of Plaintiff's mental health treatment. *See* R. at 21. The ALJ cited numerous office visits reflecting Plaintiff's conservative treatment, positive response to medications, and improved mental health symptoms. *See* R. at 21, 306, 410–11, 372–73, 386. This prior discussion sufficiently addresses the consistency factor because it implicitly compares Mr. Carpenter's

4

opinion to other evidence of record. While the ALJ could have written more, "an arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome." *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (internal quotation marks omitted).

Accordingly, because the ALJ's finding is supported by substantial evidence on the record as a whole, there is no error.

## II. The RFC is supported by substantial evidence.

Plaintiff contends the ALJ failed to explain why she omitted certain limitations from the State's psychological consultants' opinions from the RFC after finding those opinions persuasive. At Step Four, the ALJ formulated the following RFC noting Plaintiff

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out commands involving simple instructions and make simple work-related decisions; she can sustain concentration, persistence, and pace through simple tasks; she can tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, and more than occasional changes in work setting; she must avoid addressing customer complaints and avoid proximity to controlled substances; she can tolerate occasional interaction with coworkers and supervisors; and she can have no contact with the general public.

R. at 20. Absent from the RFC is the psychological consultants' opinions that Plaintiff "[w]ill likely be distracted in the presence of others." *See* R. at 64, 75. Plaintiff contends the absence of this limitation in the RFC constitutes reversible error.

Plaintiff's argument is unpersuasive. An ALJ is "not required to adopt the exact limitations set forth in the opinions she found persuasive," so long as substantial evidence supports the RFC formulation. *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023)

(per curiam). Further, under Social Security Ruling 96-8p, an ALJ must explain the RFC only when conflicts with a medical opinion. *See* 1996 WL 374184 at *7.

Here, the ALJ's RFC is supported by substantial evidence and does not conflict with the psychological consultants' opinions. At Step Three, the ALJ discussed the severity of Plaintiff's mental impairments, stating:

> In interacting with others, the claimant has a marked limitation. The claimant alleges that she has difficulty being around others, she is socially avoidant, and she does not like being around crowds. At times, on examination, it is noted that the claimant appears anxious and somewhat depressed, and she has mildly impaired social judgment skills. Nevertheless, examinations additionally indicate that the claimant is cooperative, positive, upbeat, happy, and has a spirited mood. Further still, the claimant has had a boyfriend for three years, she lives with her boyfriend and his mother, she shops in stores with her boyfriend's mother, she visited her step-mother in the hospital in March 2023 when she had a baby, she babysits her 3-month-old baby brother, and she goes to the public library.

R. at 19 (citations omitted). Before moving to Step Four, the ALJ stated that Plaintiff's RFC would reflect these functional limitations. R. at 20.

At Step Four, the ALJ discussed Plaintiff's mental impairments, noting she: (1) "has been prescribed, and is taking, psychotropic medications for her mental health symptom" which have been "relatively effective"; (2) has "received consistent mental health treatment"; and (3) "has not required any inpatient psychiatric hospitalizations, nor have her providers recommended such." R. at 21. Further, the ALJ discussed Plaintiff's daily activities noting she

> helps take care of the family pets, prepares simple meals, listens to music, watches television, collects bones, manages her own finances, reads crime novels, goes to the public library, uses the internet, paints, draws, manages a Facebook account, texts, shops in stores with her boyfriend's mother, does laundry, vacuums, sweeps, and she babysits her 3-month-old baby brother

6

Case 6:24-cv-03089-DGK   Document 11   Filed 10/31/24   Page 6 of 7

R. at 23.  Taken together, Plaintiff's conservative treatment, positive response to therapy and medications, and daily activities support the ALJ's RFC which limits her to "occasional interaction with coworkers and supervisors" and to "no contact with the general public."  *See* R. at 20.

Further, the RFC is not inconsistent with the psychological consultants' opinions.  Those opinions noted Plaintiff was moderately limited both in her ability "to work in coordination with or in proximity to others without being distracted by them" and in her ability "to get along with coworkers or peers without distracting them."  R. at 64, 75.  While the opinions note Plaintiff can "[r]elate adequately to co-workers and supervisors," they indicate she must avoid the following situations: (1) "stressful interpersonal interactions"; (2) "work addressing customer complaints"; (3) "work with a significant proportion of interpersonal interaction"; and (4) "public contact work."  R. at 65, 75–76.  These limitations are reflected in the ALJ's RFC which limits Plaintiff to "occasional interaction with coworkers and supervisors" and to "no contact with the general public."  *See* R. at 20.  Further, these limitations implicitly address Plaintiff's likelihood of being distracted.  While the RFC is worded differently than the psychological consultants' opinions, it is not inconsistent with them.

Accordingly, the Court finds no error.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  October 31, 2024                                         /s/ Greg Kays
                                                          GREG KAYS, JUDGE
                                                          UNITED STATES DISTRICT COURT